UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> STMICROELECTRONICS, INC., <br><br> Defendant. | Case No. C-14-03236-RMW <br><br> **ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO STRIKE** <br><br><br> [Re Docket Nos. 37, 38] |

Plaintiff Cisco Systems Inc.'s ("Cisco") first amended complaint ("FAC") against defendant STMicroelectronics, Inc. ("ST Micro US") alleges claims of negligence, negligent and intentional misrepresentations, and negligent and intentional interference with business relations. Dkt. No. 21 (FAC). Defendant filed a motion to dismiss ("MTD") the FAC under Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6) on the grounds that it fails to state a claim upon which relief can be granted. Dkt. No. 37 (MTD). Defendant also filed a motion to strike in part. Dkt. No. 38. For the reasons stated below, the court GRANTS IN PART defendant's motion to dismiss and DENIES the motion to strike.

## I. Background

This dispute centers on the unusually high failure rates of cable set-top boxes sold by Cisco to cable companies in India. Cisco is a major supplier of set-top boxes in India. FAC ¶ 20.  By mid-2013, the Indian set-top market had become an important source of revenue for Cisco and Cisco anticipated continued growth in the market.  FAC ¶ 1.  Cisco used the Viper17LN chip in the power supply units of its set-top boxes.  FAC ¶ 2. The Viper chip was manufactured by various subsidiaries of STMicroelectronics, N.V. Defendant ST Micro US is also a subsidiary of ST Microelectronics, N.V., but is not the manufacturer of the Viper chip. The court refers to the parent together with its various subsidiaries collectively as "ST Micro", except as otherwise specified.

In 2012 ST Micro changed its process for manufacturing the Viper chip.  FAC ¶ 25. ST Micro did not inform Cisco of these changes when they were made. FAC ¶ 25. These changes led the Viper chips to experience excessive leakage of current (referred to as IDSS leakage), which in turn led to overheating of the chip and shut-down of the set-top box. FAC ¶ 26.

In May 2013, one of Cisco's set-top box manufacturers observed failures with the Viper chip. FAC ¶ 29. Cisco then reported the potential problem to ST Micro and sent the chip in for failure analysis. FAC ¶ 29. ST Micro generated a Customer Complaint Report which concluded that the defect was random in nature, and that the Viper chip was not defective. FAC ¶ 29.  Nonetheless, ST Micro decided to make further changes in its manufacturing processes. Dkt. No. 44-1, Ex-1 to FAC. Cisco alleges that ST Micro would not have made these changes unless it knew that the Viper chips had a "significant latent defect escape problem or, at least, the potential for a latent defect." FAC ¶ 31. According to Cisco, the changes did not solve the IDSS leakage problem. FAC ¶ 31.

Indeed, through further communications involving employees of ST Micro US and other ST Micro subsidiaries, Cisco reported that Viper chips continued to fail. On June 10 and 12, 2013, Cisco communicated to ST Micro US its preliminary analysis indicating that ST Micro's chip was defective and causing set-top failures, and sought ST Micro's assistance with addressing and remedying the set-top failures. FAC ¶¶ 44, 45. ST Micro promised to provide Cisco its full assistance, including complete and accurate information regarding its chip and the measures it was making to identify and solve the leakage issue. FAC ¶ 4. ST Micro US provided Cisco with a list of

employees from different ST Micro offices or subsidiaries, including subsidiaries located in U.S.A., Italy, China, and Hong Kong. FAC ¶ 38. ST Micro represented to Cisco that these employees were knowledgeable about the Viper chip defect and could help analyze the set-top box failures. FAC ¶¶ 38, 47. Cisco frequently communicated with this "core group" from ST Micro while it investigated the issue. FAC ¶ 47.

From June 2013 to September 2013, ST Micro assured Cisco that its manufacturing changes had solved the leakage problem. However, Cisco continued to observe abnormal failure rates, even with chips from manufacturing lots that ST Micro assured Cisco were fixed. FAC ¶¶ 50-104. Throughout this process, Cisco communicated with ST Micro's "core team" in charge of the Viper chip issue, including employees of ST Micro US. FAC ¶¶ 95.

Finally, in November 2013 ST Micro provided Cisco with an official communication acknowledging the Viper chip problems. FAC ¶ 119, 122. Up to that point in their communications with Cisco, ST Micro had continued to refuse to acknowledge that the Viper chip was the sole root cause of the set-top failures. In December the two companies met to conduct tests on 155 set-top boxes that had Viper chips. FAC ¶ 123-26. Following these tests, an ST Micro employee represented on behalf of ST Micro that the "Viper chip did have a problem, and any statement by any ST Micro representative to the contrary was incorrect." FAC ¶ 127-28.

On December 19, 2013, ST Micro sent Cisco a final PowerPoint presentation acknowledging responsibility for the Viper chip issue, its improper reaction to the situation, and summarizing its responsibility. FAC ¶ 129-30.

## II. Analysis

### A. Standard for Motion to Dismiss

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 129 S.Ct. at

1949 (quoting *Twombly*, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *Contreras v. JPMorgan Chase*, 2014 WL 4247732 (C.D. Cal. Aug. 28, 2014).

Although the scope of review is limited to the contents of the complaint, the court may also consider exhibits submitted with the complaint. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).

Defendant moves to dismiss each of plaintiff's claims because (1) plaintiff failed to make allegations against ST Micro US, rather than against ST Micro generally, and (2) plaintiff fails to allege each element of the claims asserted.

### B. The Complaint Contains Specific Allegations Against ST Micro US

Defendant's first argument is that plaintiff's complaint only alleges facts against ST Micro generally, and does not allege facts specific to ST Micro US. MTD at 8. This is not persuasive because the FAC names individual employees, their specific statements or acts, and specifies which subsidiary they are employed by. FAC ¶¶ 11-16. The FAC therefore contains allegations which would be sufficient to show primary liability by ST Micro US, through acts of ST Micro US employees, as further explained below. Cisco further explains that the reason it makes allegations as to "ST Micro" generally is that the ST Micro US employees and officers are responsible for the actions of the employees in the other offices, on the theory that ST Micro US employees endorsed and ratified the actions of the employees in the other offices and conspired with them. FAC ¶ 16. The FAC alleges that ST Micro US is secondarily liable for the actions of ST Micro generally through a civil conspiracy theory. The court finds that the FAC does not allege sufficient facts to support secondary liability of ST Micro US under a theory of civil conspiracy. Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994). The

elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design. *Applied Equip. Corp.*, 7 Cal. 4th at 511. To allege the formation and operation of the conspiracy, plaintiff must allege an agreement to commit the wrongful acts. *Wasco Products, Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 992 (9th Cir.2006). The conspiracy "may be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances."*117 Sales Corp. v. Olsen*, 80 Cal. App. 3d 645, 649 (1978). But when a plaintiff alleges that a defendant is liable for intentional misrepresentations under a civil conspiracy theory, Rule 9(b) requires that the plaintiff allege with particularity facts that support the existence of a civil conspiracy. *Palomares v. Bear Stearns Residential Mortg. Corp.*, No. 07cv01899, 2008 U.S. Dist. LEXIS 19407, at *12 (S.D. Cal. Mar. 13, 2008).

The FAC fails to allege sufficient facts that show an agreement between ST Micro US and other subsidiaries. The FAC merely alleges that ST Micro US employees exchanged information with the employees of other subsidiaries regarding chips. This does not show an actual agreement or plan between the subsidiaries to misinform Cisco, but a simple exchange of information. *See* FAC ¶ 16. Cisco alleges that the members of the "core team" were represented as knowledgeable sources of information and would assist Cisco with the set top failures, but does not allege that the employees entered into an agreement and planned to provide Cisco with inaccurate information. Cisco's allegations that starting June 10, 2013, the employees of multiple ST Micro subsidiaries, including ST Micro US, conspired to conceal information from Cisco regarding the Viper chip defects and conspired to provide Cisco inaccurate information regarding the Viper chip defects are conclusory allegations insufficient to support a pleading of conspiracy. *See* FAC ¶¶ 13-16; *Twombly*, 550 U.S. at 570; *Iqbal*, 129 S. Ct. at 1949-50.

Nevertheless, the failure to properly allege conspiracy is not a fatal pleading defect, because the FAC allegations support ST Micro US's direct liability on each of the claims.

### C. Cisco Adequately Pleads Claims against ST Micro US

#### 1. Negligence (claim 1)

Defendant argues that the FAC fails to state a claim for negligence because Cisco alleges identical conduct in support of its negligence and negligent misrepresentation theories, rendering its negligence claim impermissibly duplicative. MTD at 17. Defendant also argues that ST Micro US is not responsible for any of the allegedly negligent acts because Cisco does not allege facts imposing any duties on ST Micro US. Finally, defendant argues that the economic loss doctrine precludes a manufacturer's liability for economic loss alone. MTD at 19 n. 11.

Plaintiff claims that defendant was negligent in investigating, testing, and correcting the IDSS leakage, and by concealing or failing to provide accurate information. Opp. at 16. Plaintiff relies on a theory of voluntary undertaking to argue that ST Micro U.S. undertook a duty to assist Cisco with the leakage issue and to provide accurate information regarding the Viper chip when it promised to help them. Opp. at 17.

To state a cognizable claim for negligence under California law, plaintiff "must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Wells Fargo Bank, N.A. v. Renz*, 795 F. Supp. 2d 898, 924-25 (N.D. Cal. 2011) (citing *Ileto v. Glock, Inc.,* 349 F.3d 1191, 1203 (9th Cir. 2003)). A duty of care may arise through statute, contract, the general character of the activity, or the relationship between the parties. *The Ratcliff Architects v. Vanir Constr. Mgmt., Inc.*, 88 Cal. App. 4th 595, 604-05 (2001) (citing *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803 (1979)). Defendants who undertake an affirmative course of conduct affecting the interests of another are regarded as assuming a duty to act and must do so with care, as they will be held liable for negligent acts or omissions. *Rickley v. Goodfriend*, 212 Cal. App. 4th 1136, 1156 (2013). Where a voluntary undertaking gives rise to a duty of care, the scope of such duty depends upon the nature of the undertaking. *Elsheref v. Applied Materials, Inc.*, 223 Cal. App. 4th 451, 462 (2014) (citing *Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 249 (2005)).

Generally, there is no duty to prevent economic loss[1] to third parties in negligence actions at common law. *Greystone Homes, Inc. v. Midtec, Inc.,* 168 Cal. App. 4th 1194, 1216 (2008) (citing

---

[1] "Economic loss" consists of damages for inadequate value, cost of repair, cost of replacement of defective products, and lost profit. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1050 (9th

*Ratcliff Architects*, 88 Cal. App. 4th at 605). As an exception to the economic loss rule, the court in *J'Aire*, 24 Cal. 3d at 804, held that recovery is not foreclosed where only injury to prospective economic advantage is claimed, so long as there is a special relationship between the parties, which need not rise to the level of contractual privity.[2] To evaluate whether there is a special relationship that would give rise to a duty to prevent economic loss to third parties in negligence actions, the court examines the following factors: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm.

Cisco alleges that defendant ST Micro US promised to assist Cisco with the Viper chip issues, at which point it was under a duty to do so with due care. The FAC alleges that on June 10, 2013 ST Micro US through one of its employees agreed to provide "immediate assistance" to identify the potential Viper chip failures and implement any necessary corrective action. *See* FAC ¶¶ 41, 44, 50, 51, 65. This promise also gave rise to a special relationship between plaintiff and ST Micro US because it made the possibility of resulting harm reasonably foreseeable. Cisco alleges that it informed ST Micro, when it reported the failure, that the set-top boxes at issue were a high-volume product and that the problem could escalate very quickly, highlighting the importance of accurate information from ST Micro. *See* FAC ¶ 44, 46, 51. Plaintiff has alleged sufficient facts to show with a reasonable degree of certainty that it suffered injuries because of defendant's negligent investigation, testing, and correction of the Viper chip issue, and its negligence in concealing material information and providing inaccurate information. Plaintiff's relationship with its customers deteriorated as a result of their loss of confidence in Cisco, and plaintiff incurred costs as a result of manufacturing defective set-top boxes which were rejected by the customers, and further

---

Cir. 2014) (citing *Robinson Helicopter Co., Inc. v. Dana Corp.,* 34 Cal.4th 979 (2004)). Economic loss may also include loss of expected proceeds, lost opportunities, and damages. *Dubbs v. Glenmark Generics Ltd.*, No. CV 14-346 RSWL MRWX, 2014 WL 1878906, at *3 (C.D. Cal. May 9, 2014).

[2] Plaintiff argues that the economic loss rule does not apply when a plaintiff lacks contractual privity with a defendant, but that proposition appears contrary to California law. *Dubbs v. Glenmark Generics Ltd.*, No. CV 14-346 RSWL MRWX, 2014 WL 1878906, at *3-4 (C.D. Cal. May 9, 2014); *see also Ott v. Alfa–Laval Agri, Inc.,* 31 Cal. App. 4th 1439, 1454 (1995).

expense to store and ship back rejected stock. *See* FAC ¶¶ 132, 134. If Cisco's allegations are true, defendant's conduct was also morally culpable, as plaintiff alleges that ST Micro sales representatives in the course of marketing ST Micro products to Cisco's customers were "spreading false information regarding its Viper chips" by telling them that there were no problems with the chip. FAC ¶¶ 113-117.  Cisco and St Micro therefore had a special relationship that would give rise to a duty to prevent economic loss to third parties in negligence actions.

Defendant's last argument is that Cisco's negligence claim is impermissibly duplicative of the negligent misrepresentation claim, and cites *Holcomb v. Wells Fargo Bank, N.A.*, 155 Cal. App. 4th 490, 501 (2007), as modified (Oct. 22, 2007). If an alleged cause of action adds nothing to the complaint by way of fact or theory of recovery, containing only allegations of other causes of action, it is duplicative and should be dismissed. *Rodrigues v. Campbell Indus.*, 87 Cal. App. 3d 494, 501 (1978). Here, the FAC alleges sufficient facts to support the existence of a duty giving rise to liability other than that for negligent misrepresentations. As explained above, the FAC alleges that ST Micro promised to provide "immediate assistance" involving analysis, testing and potential corrective action, which ST Micro is alleged to have performed negligently. FAC ¶ 137, 139. This is separate conduct from negligent misrepresentation.

Cisco has sufficiently alleged that defendant owed plaintiff a duty of care on account of its voluntary undertaking to help Cisco solve the Viper chip problem, which is not barred by the economic loss rule because of the special relationship between Cisco and ST Micro US. The court DENIES defendant's motion to dismiss the negligence claim.

### 2. Negligent and Intentional Misrepresentation (claims 2 and 3)

Defendant argues that the FAC fails to state a claim for intentional or negligent misrepresentation because it does not specify which person at which subsidiary actually made the affirmative misstatements in question, or whether the person was an employee of ST Micro US. MTD at 14. Defendant also argues that Cisco does not specify who prepared the allegedly misleading reports, and that as the reports were not prepared by ST Micro U.S., defendant cannot be liable for the misstatements in the reports. MTD at 14. Further, defendant states that Cisco does not allege facts showing that ST Micro US employees, who forwarded failure analysis reports and

1    spreadsheets identifying lots affected by the IDSS leakage, had knowledge of any false information
2    contained in the spreadsheets or reports, or lacked reasonable grounds for believing that the
3    information was true. MTD at 14, 15.

4    As to the omissions alleged in the FAC, defendant argues that Cisco failed to state a claim
5    based on concealment because it does not specify who concealed the information at issue, nor does
6    it allege facts showing that any of the ST Micro US employees had knowledge of the concealed
7    facts and acted with intent to deceive Cisco. MTD at 17. Further, defendant argues that the FAC
8    fails to allege facts imposing a duty to disclose or showing that Cisco suffered any damages as a
9    result of the delay in providing the information. MTD at 17.

10   The elements of a claim for intentional misrepresentation are (1) a misrepresentation; (2)
11   knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5)
12   resulting damage. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). Each element of a fraud
13   count must be pleaded with particularity so as to apprise the defendant of the specific grounds for
14   the charge and enable the court to determine whether there is any basis for the cause of action,
15   although less specificity is required if the defendant would likely have greater knowledge of the
16   facts than the plaintiff. *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 230-31 (2013). The essential
17   elements of a claim for negligent misrepresentation are the same as for intentional
18   misrepresentations, except that it does not require knowledge of falsity, but instead requires a
19   misrepresentation of fact by a person who has no reasonable grounds for believing it to be true. *West*
20   *v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 792 (2013). In California, "omissions" or
21   nondisclosures cannot give rise to liability for negligent misrepresentation. *Mitsui O.S.K. Lines, Ltd.*
22   *v. SeaMaster Logistics, Inc.*, 913 F. Supp. 2d 780, 789 (N.D. Cal. 2012).

23   Plaintiff's allegations, if true, would establish all the elements of intentional and negligent
24   misrepresentation. The FAC alleges that defendant promised to assist Cisco with the Viper chip
25   issue, assuring Cisco that it would assemble a qualified team and would provide Cisco with
26   complete and accurate information.  Such a promise necessarily implies the intention to perform, so
27   if the promise was made without such intention, there is an implied misrepresentation of fact that
28   may be actionable fraud. *Lazar*, 12 Cal. 4th at 638.

As explained above, defendant's voluntary undertaking gives rise to a duty of care. Ordinarily, nondisclosures are not actionable under California law unless a confidential or fiduciary relationship between the parties gives rise to an affirmative duty to disclose. *See Goodman v. Kennedy,* 18 Cal. 3d 335, 346–47 (1976). However, even in the absence of such a relationship, a duty to disclose can arise "when the defendant ha[s] exclusive knowledge of material facts not known to the plaintiff" or "when the defendant actively conceals a material fact from the plaintiff." *Mitsui O.S.K. Lines, Ltd. v. SeaMaster Logistics, Inc.*, 913 F. Supp. 2d 780, 787 (N.D. Cal. 2012). Also, where a party volunteers information, the telling of a half-truth calculated to deceive is fraud. *Barnes & Noble, Inc. v. LSI Corp.*, 849 F. Supp. 2d 925, 936 (N.D. Cal. 2012).

Defendant allegedly failed to disclose a latent defect in the Viper chip and the root cause of the problem, and misrepresented the failure rate of the Viper chips, and the coverage and reliability of the remedial measure. Plaintiff identified the telephone conversations, emails, and other communications when the misrepresentations were made, identified the dates of these communications, and the persons present by name. *See Barnes & Noble, Inc.*, 849 F. Supp. 2d at 935.

For example, the FAC alleges that ST Micro US employees Axisa and Cosson confirmed in conference calls that the information provided in the reports was accurate, that a baking process was applied to Viper chips after a certain date, and that the failure rate for the chips was not abnormal. FAC ¶ 68-72. Cisco told them that it was going to rely on this information to initiate repairs, reworks and manufacturing. Cisco's reliance on the statements was reasonable as they were told the employees were knowledgeable on the issue. The FAC alleges sufficient facts to show that the information was not accurate, and that defendant had not applied the baking process consistently to all the Viper chips, as it had assured plaintiff.

Plaintiff pleads sufficient facts from which it can be inferred that defendant either knew or should have known that the information provided was false or incomplete. An intent to deceive may be pleaded generally. *See* Fed. R. Civ. Proc. 9(b). The FAC alleges that the ST Micro U.S. employees had access to internal reports that are usually generated after implementing a manufacturing change and which should have revealed the latent defects. FAC ¶¶ 27, 28, 37, 52, 66.

The employees were also privy to information included in reports that were done after receiving customer complaints, after contemplating use of the baking process, and as part of the screening testing prior to shipment. FAC ¶¶ 27, 28, 37, 98.

Plaintiff adequately pled damages by alleging that its customers lost confidence in Cisco while the set top boxes kept failing. This in turn led to cancellations of orders, rejection of already manufactured and shipped goods, and costs incurred by plaintiff to store the rejected goods and ship them back. *See* FAC ¶¶ 132, 134.

Plaintiff has made sufficient allegations to support its claims of negligent and intentional misrepresentations. Defendant's motion to dismiss is DENIED as to claims 2 and 3.

### 3. Negligent and Intentional Interference with Business Relations (claims 4 and 5)

Plaintiff alleges a claim for negligent interference with business relations (claim 4) and intentional interference with business relations (claim 5). Defendant argues that under California law there is no cause of action for intentional or negligent "interference with business relations." Instead, Cisco is combining the separate torts of interference with contractual relations and interference with prospective economic advantage into a single "business relations" claim. MTD at 20.

The California Supreme Court has made it clear that the torts of intentional interference with contractual relations and intentional interference with prospective economic advantage are distinct, even though "the tort of interference with contract is merely a species of the broader tort of interference with prospective economic advantage." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1157 (2003). The court has also explained that while intentionally interfering with an existing contract is "a wrong in and of itself," intentionally interfering with a plaintiff's prospective economic advantage is not, and that therefore a plaintiff must plead that the defendant engaged in an independently wrongful act. *Id.* at 1158. The tort of interference with prospective economic advantage can be established by showing, *inter alia*, an interference with an existing contract or a contract which is certain to be consummated, but it is not dependent on the existence of a valid contract like the tort of interference with contract. *Id.* at 1157-58.

As plaintiff is alleging under the umbrella of "interference with business relations" interference with both contractual and business relationships, it is unclear whether plaintiff is trying to state a claim for the broader tort of interference with economic advantage, or for both the tort of interference with contract relationships and the tort of interference with prospective economic advantage.

The court reads the FAC in the light most favorable to the plaintiff, and treats the single claim of "interference with business relations" as a claim for both interference with contractual relations and interference with prospective economic advantage. Claim 4 (negligent interference) and claim 5 (intentional interference) are thus treated a four claims: negligent interference with contractual relations; negligent interference with prospective economic advantage; intentional interference with contractual relations; and intentional interference with prospective economic advantage.[3]

Plaintiff's claim of negligent interference with contractual relations is improper because plaintiff alleges that ST Micro negligently interfered with Cisco's contractual and business relationships, but in California there is no cause of action for negligent interference with contractual relations. *Strome v. DBMK Enterprises, Inc*, No. 14-CV-02398-SI, 2014 WL 6485533, at *9 (N.D. Cal. Nov. 19, 2014) (citing *Davis v. Nadrich*, 174 Cal.App. 4th 1, 9 (2009)). Plaintiffs may be able to allege a claim for negligent inference with prospective economic advantage, but that claim is not currently adequately alleged.

As it is unclear what claim plaintiff is trying to allege under the "interference with business relations" name, defendant's motion to dismiss as to claims 4 and 5 is GRANTED with leave to amend for plaintiff.

**D.  Motion to Strike**

Defendant moves to strike paragraphs 111-117 of the FAC and the fifth cause of action (intentional interference with business relations) under Rule 12(f) and based on a stipulation between the parties regarding amendments to the complaint. Dkt. No. 38, MTS at 1.

---

[3] None of these claims, however, would be in violation of the spirit of the parties' stipulation against adding new claims to the amended complaint. The initial complaint included a claim for negligent interference with contract relations, and the tort of interference with contract is merely a species of the broader tort of interference with prospective economic advantage.

Paragraphs 111-117 in the FAC are relevant to Cisco's allegations of improper conduct and intent that support elements of plaintiff's claims. Accordingly, the court DENIES defendant's motion to strike as to paragraphs 111-117. Defendant's motion to strike the claim for intentional interference with business relations is DENIED because a claim for intentional interference with contractual relations or a claim for intentional interference with prospective economic advantage would not violate the parties' stipulation against adding new claims to the amended complaint.

### III.  Order

For the reasons explained above, the motion to dismiss is DENIED as claims 1 through 3 and GRANTED as to claims 4 and 5, with leave to amend. The motion to strike is DENIED. Plaintiff shall file an amended complaint by January 23, 2015.

Dated: December 29, 2014

_____
Ronald M. Whyte
United States District Judge