1  Sara B. Brody, SBN 130222
   sbrody@sidley.com
2  Nicole M. Ryan, SBN 175980
   nicole.ryan@sidley.com
3  Emily A. Caveness, SBN 290527
   ecaveness@sidley.com
4  Ryan G. Fant, SBN 274153
   rfant@sidley.com
5  SIDLEY AUSTIN LLP
   555 California Street, Suite 2000
6  San Francisco, California  94104
   Telephone:  (415) 772-1200
7  Facsimile:  (415) 772-7400

8  Attorneys for Defendant
   STMICROELECTRONICS, INC.
9

10              **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12                   **SAN JOSE DIVISION**

13  CISCO SYSTEMS, INC.,                    Case No. 14-cv-03236-RMW

14          Plaintiff,

15       v.                                 **DEFENDANT STMICROELECTRONICS,
                                            INC.'S NOTICE OF MOTION AND
16  STMICROELECTRONICS, INC. and           MOTION TO DISMISS THIRD AMENDED
    STMICROELECTRONICS, S.R.L.,            COMPLAINT; MEMORANDUM OF
17                                          POINTS AND AUTHORITIES**
            Defendants.
18                                          Date:     May 29, 2015
                                            Time:     9:00 a.m.
19                                          Place:    Courtroom 6, 4th Floor
                                            Judge:    Hon. Ronald M. Whyte
20

21

22

23

24

25

26

27

28

---

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF CISCO SYSTEMS, INC. AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant STMicroelectronics, Inc. ("Defendant" or "STMicro U.S.") will and hereby does move this Court to dismiss all of the claims asserted in Cisco Systems, Inc.'s ("Cisco's") Third Amended Complaint insofar as they are premised on derivative liability for the alleged actions of others,[1] and the claim for intentional interference with existing contractual relations in its entirety, for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6).  This motion shall be heard on May 29, 2015 at 9:00 a.m., or as soon thereafter as it may be heard, before the Honorable Ronald M. Whyte, United States District Judge, in Courtroom 6 of the San Jose Courthouse located at 280 South First Street, Fourth Floor, San Jose, California 95113.  This Motion is based on this Notice, the accompanying memorandum of points and authorities, the complete files and records of this action, and such other matters and arguments as may come before this Court, including those raised in connection with reply briefing and oral argument relating to this motion.

Defendant seeks an order dismissing with prejudice Cisco's claims to the extent they are premised on derivative liability and Cisco's claim for intentional interference with existing contractual relations in full in the above-captioned matter.

Dated:  April 20, 2015                    SIDLEY AUSTIN LLP


By: */s/ Sara B. Brody*
Sara B. Brody
Attorneys for Defendant
STMICROELECTRONICS, INC.

---

[1] Cisco's claims for intentional misrepresentation (Count Three), intentional interference with prospective economic advantage (Count Five), and intentional interference with existing contractual relations (Count Six) appear to be premised on derivative liability as well as direct liability and should be dismissed insofar as they are premised on derivative liability.  It does not appear that Cisco's claims for negligence (Count One), negligent misrepresentation (Count Two), and negligent interference with prospective economic advantage (Count Four) are premised on derivative liability, as it is not possible to conspire to commit negligent acts, but to the extent these additional claims are premised on derivative liability, they should be dismissed as well.  Cisco's derivative liability allegations are contained in paragraphs 145 to 157.

## <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ........................................................................................................... 1

II.  STATEMENT OF ISSUES TO BE DECIDED ........................................................... 3

III.  PLAINTIFF'S ALLEGATIONS .................................................................................. 3

    A.  Identification of the Alleged Latent Defect .................................................... 3

    B.  Alleged Failure to Provide Accurate Information ......................................... 4

    C.  Alleged Conspiracy to Defraud Cisco ........................................................... 5

IV.  PROCEDURAL HISTORY ......................................................................................... 5

V.  ARGUMENT ............................................................................................................... 7

    A.  Legal Standard ................................................................................................. 7

    B.  Plaintiff Fails to Allege Facts Supporting Any Basis for
        Imposing Liability on STMicro U.S. for the Actions of
        Other ST Micro Subsidiaries. ........................................................................ 9

        1.  Cisco's Allegations on "Information and Belief" Are
            Insufficient to Allege Conspiracy to Defraud. ................................ 10

        2.  To the Extent Cisco Seeks to Impose Conspiracy-Based
            Liability on STMicro U.S. for Negligence, Negligent
            Misrepresentation, or Negligent Interference,
            that Attempt Necessarily Fails. ........................................................ 12

        3.  Cisco's Estoppel Allegations Are Likewise Insufficient
            to Impose Derivative Liability on STMicro U.S. .......................... 13

    C.  Cisco Fails to State a Claim for Intentional Interference
        with Existing Contractual Relations. ............................................................ 13

VI.  CONCLUSION ........................................................................................................... 17

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 7, 8, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................ 7, 13

*Charnay v. Cobert*,
   145 Cal. App. 4th 170 (2006) .................................................................................. 8

*Das v. WMC Mortg. Corp.*,
   831 F. Supp. 2d 1147 (N.D. Cal. 2011) ................................................................... 8

*Davis v. Nadrich*,
   174 Cal. App. 4th 1 (2009) ..................................................................................... 16

*Delphix Corp. v. Actifio, Inc.*,
   2014 U.S. Dist. LEXIS 132310 (N.D. Cal. Mar. 19, 2014) ................................ 11, 12

*Green v. Travelers Indem. Co.*,
   185 Cal. App. 3d 544 (1986) .................................................................................. 13

*Hartford Life Ins.Co. v. Banks*,
   2009 WL 863267 (S.D. Cal. Mar. 25, 2009) ......................................................... 14

*Hill v. Opus Corp.*,
   841 F. Supp. 2d 1070 (C.D. Cal. 2011) ................................................................... 9

*Image Online Design, Inc., v. Internet Corp. for Assigned Names and Nos.*,
   2013 WL 489899 (C.D. Cal. Feb. 7, 2013) ............................................................ 15

*Impac Warehouse Lending Grp. v. Credit Suisse First Boston Corp.*,
   2006 U.S. Dist. LEXIS 101145 (C.D. Cal. June 20, 2006) ..................................... 11

*Int'l Medcom, Inc. v. S. E. Int'l, Inc.*,
   2014 U.S. Dist. LEXIS 8882 (N.D. Cal. Jan. 23, 2014) ......................................... 14

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .................................................................................. 8

*Kieran v. Samsung Semiconductor, Inc.*,
   1993 U.S. Dist. LEXIS 21456 (N.D. Cal. July 6, 1993) ......................................... 11

*Knott v. McDonald's Corp.*,
   147 F.3d 1065 (9th Cir. 1998) ................................................................................ 14

*Koehler v. Pulvers*,
    606 F. Supp. 164 (S.D. Cal. 1985) ........................................................................ 2, 12

*Moore v. Kayport Package Express, Inc.*,
    885 F.2d 531 (9th Cir. 1989) ....................................................................................... 10

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ........................................................................................... 10

*Nexsales Corp. v. Salebuild, Inc.*,
    2012 WL 216260 (N.D. Cal. Jan. 24, 2012) .............................................................. 14

*Ove v. Gwinn*,
    264 F.3d 817 (9th Cir. 2001) ......................................................................................... 7

*Palomares v. Bear Stearns Residential Mortg. Corp.*,
    2008 U.S. Dist. LEXIS 19407 (S.D. Cal. Mar. 13, 2008) .......................................... 8, 9

*Perez v. Banana Republic, LLC*,
    2014 WL 2918421 (N.D. Cal. June 26, 2014) ............................................................. 9

*PMC, Inc. v. Saban Entm't Inc.*,
    45 Cal. App. 4th 579 (1996) ........................................................................................ 14

*Quelimane Co. v. Stewart Title Guar. Co.*,
    19 Cal. 4th 26 (1998) ............................................................................................ 14, 15

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987) ....................................................................................... 16

*Sicor Ltd. v. Cetus Corp.*,
    51 F.3d 848 (9th Cir. 1995) ......................................................................................... 14

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ....................................................................................... 8

*Trindade v. Reach Media Grp., LLC*,
    2013 WL 3977034 (N.D. Cal. July 31, 2013) ............................................................. 16

*United States ex rel. HCI Sys. v. Agbayani Constr. Co.*,
    2014 U.S. Dist. LEXIS 107791 (N.D. Cal. Aug. 5, 2014) ........................................... 8

*Wofford v. Apple Inc.*,
    2011 WL 5445054 (S.D. Cal. Nov. 9, 2011) .............................................................. 15

*Yanik v. Countrywide Home Loans, Inc.*,
    2010 WL 4256312 (C.D. Cal. Oct. 18, 2010) ............................................................ 14

1

**STATUTES & RULES**

Cal. Civ. Proc. Code § 425.16 ...................................................................................... 6

Fed. R. Civ. P. 8(a) .................................................................................................... 3, 8

Fed. R. Civ. P. 9(b) .................................................................................................. passim

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 7, 8, 9

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2      Defendant STMicroelectronics, Inc. ("Defendant" or "STMicro U.S.") respectfully submits

3   the following memorandum of points and authorities in support of its motion to dismiss portions of

4   Plaintiff Cisco Systems, Inc.'s ("Plaintiff" or "Cisco") Third Amended Complaint (the "Third

5   Amended Complaint" or "TAC").

6   **I.      INTRODUCTION**

7      Following this Court's December 29, 2014 order granting in part STMicro U.S.'s motion to

8   dismiss Cisco's amended complaint, Cisco has now filed its fourth complaint against STMicro U.S.

9   asserting claims related to alleged problems with set-top boxes that Cisco sold in India.  In this

10  newest iteration of its complaint, Cisco attempts to re-plead claims that this Court previously found to

11  be insufficient.  Because Cisco once again fails to allege well-pleaded facts in support of these claims,

12  the Court should dismiss these claims with prejudice.

13     In its prior complaint, Cisco attempted to assert claims against STMicro U.S. directly, based

14  on STMicro U.S.'s own alleged actions, as well as indirectly, based on the alleged actions of other,

15  separate subsidiaries of STMicro U.S.'s ultimate parent company, STMicroelectronics N.V.  The

16  Court upheld several of Cisco's claims asserted directly against STMicro U.S., stating at the hearing

17  that they were "marginally sufficient," but found that Cisco did not adequately plead conspiracy or

18  any other basis for holding STMicro U.S. liable for the actions of other STMicroelectronics N.V.

19  subsidiaries.  The Court also dismissed Cisco's claims for negligent and intentional "interference with

20  business relations," finding that those claims were not adequately pled and that it was unclear what

21  claim Plaintiff was trying to assert under that name.

22     In its TAC, Cisco again seeks to impose liability on STMicro U.S. for the alleged actions of

23  other ST Micro entities by asserting a conspiracy theory and by contending that STMicro U.S. should

24  be estopped from denying responsibility for the actions and omissions of the other ST Micro entities.

25  In addition, Cisco attempts to plead its prior "interference with business relations" claims as three

26  separate claims:  "negligent interference with prospective economic advantage," "intentional

27  interference with prospective economic advantage," and "intentional interference with existing

28  contractual relations."

1

Once again, Cisco fails to properly allege conspiracy or any other basis for imposing derivative liability on STMicro U.S. for the actions of others.  The TAC expressly states that its conspiracy allegations are based **solely** on information and belief, and Cisco does **not** state any facts on which that information and belief are based.  Such unsubstantiated pleading on information and belief, without identifying the facts on which such information and belief are based, is insufficient under established Ninth Circuit law.  Accordingly, Cisco's conspiracy allegations should be dismissed.  Moreover, to the extent that Cisco is attempting to assert estoppel as an additional theory of liability, that theory likewise fails.  Not only are Plaintiff's estoppel allegations improperly made on information and belief, but estoppel is not a valid basis for imposing substantive liability on one party for the actions of another party.  Accordingly, Cisco does not allege facts sufficient to support any theory of derivative liability against STMicro U.S., and all its claims should be dismissed insofar as they are premised on such a theory.[1]

Cisco also fails to allege facts sufficient to state a claim for intentional interference with existing contractual relations.  Cisco bases this claim on conclusory assertions without alleging any facts that establish the existence of a specific, valid contract, an actual breach of such contract, or intentional acts designed to induce such a breach.  Accordingly, the TAC does not plead the elements of a claim for intentional interference with existing contractual relations, and that claim should be dismissed in its entirety.

Cisco has had repeated opportunities to plead the claims at issue in this motion yet has repeatedly failed to state a claim.  Allowing Cisco a fifth attempt at pleading its inherently deficient claims would be a waste of this Court's and the parties' time and resources.  Accordingly, STMicro

---

[1] Moreover, Cisco fails to specify in the TAC which, if any, of its causes of action are in fact premised on a theory of derivative liability.  None of the TAC's causes of action state that they are predicated on such a theory.  However, the body of the TAC includes a section entitled, "The Participating Officers Conspired to Defraud Cisco," TAC § IV (¶¶ 145-157), and each cause of action purports to incorporate paragraphs 1-157 of the TAC.  Cisco's only reference to estoppel is a paragraph within the conspiracy section of the TAC.  *See id.* ¶ 155.  To the extent Cisco attempts to base its negligence, negligent misrepresentation, and negligent interference clams on a conspiracy theory, such an attempt clearly fails for the additional independent reason that there cannot be a conspiracy to commit negligence.  *See, e.g.*, *Koehler v. Pulvers*, 606 F. Supp. 164, 173 n.10 (S.D. Cal. 1985) ("This court is unaware of California decisional law imposing liability for conspiring to commit negligence.  The allegation of civil conspiracy appears inherently inconsistent with the allegation of an underlying act of negligence.").

1    U.S. respectfully requests that the Court dismiss these claims with prejudice.

2    **II.     STATEMENT OF ISSUES TO BE DECIDED**

3          Whether Cisco's claims predicated on derivative liability for the alleged actions of others, and

4    its claim for intentional interference with existing contractual relations, should be dismissed pursuant

5    to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6) for failure to state a claim upon which

6    relief can be granted.

7    **III.    PLAINTIFF'S ALLEGATIONS**

8          Cisco alleges that it was a major supplier of set-top boxes in India.  TAC ¶ 1.  It alleges that

9    one of the components in its set-top boxes was the Viper17LN chip, allegedly manufactured by an

10   unspecified "ST Micro" entity, which was used within the power supply unit.  *Id*. ¶ 2.  Cisco alleges

11   that Viper17LN chips overheated and caused the set-top boxes to stop working, prompting consumers

12   to return malfunctioning set-top boxes to Cisco's cable company customers.  *Id*.  Cisco further alleges

13   that it continued to manufacture and repair set-top boxes with the Viper17LN chips, telling customers

14   that the failure problem had been resolved.[2]  *Id*. ¶ 7.  Yet, Cisco alleges, the set-top boxes continued

15   failing, causing Cisco's customers to go from "being frustrated to being irate and terminating their

16   relationships with Cisco."  *Id*. ¶ 8.

17         **A.     Identification of the Alleged Latent Defect**

18         Cisco alleges that STMicro U.S., a U.S.-based subsidiary of STMicroelectronics N.V., and

19   STMicroelectronics, S.r.l. ("STMicro Italy"), an Italy-based subsidiary of STMicroelectronics N.V.,

20   are to blame for "destroy[ing]" Cisco's Indian set-top box business (*id*. ¶ 2), based on a series of

21   purported wrongdoings.  Cisco claims that "ST Micro"—defined to include STMicro U.S. and

22   STMicro Italy collectively—changed its manufacturing process, which caused defects in the

23   _____

24   [2] In fact, Cisco purchases its set-top boxes from a Taiwanese contract manufacturer who builds the
     boxes using a power supply unit that is assembled by a Chinese company known as Airline

25   Mechanical Company ("AMC").  It is the AMC power supply unit that allegedly contains the
     Viper17LN chip.  STMicro U.S. has already explained that the exhibits to Cisco's complaint show

26   that Cisco's assertion that an unspecified "ST Micro" entity supplied Cisco with the Viper Chips is
     false.  Def.'s Mem. in Support of Mot. to Dismiss Am. Complt. (ECF No. 37) at 3 n.1.  Despite this,

27   Cisco repeats this demonstrably false assertion that an unspecified "ST Micro" entity "started to
     supply Cisco with millions of defective and potentially defective chips" in the Third Amended

28   Complaint.  TAC ¶ 2.

1   ViperLN17 chips, but did not inform Cisco of the changes when they were made.  *Id*. ¶¶ 29-30.

2   Based on allegations made "on information and belief," Cisco asserts that the "Participating

3   Officers"—defined to include employees of STMicro U.S., STMicro Italy, and an unnamed

4   STMicroelectronics N.V. subsidiary based in China ("STMicro China") (*id*. ¶ 16)—knew or should

5   have known that the chips had a latent defect before they communicated with Cisco.  *Id*. ¶¶ 31-38.

6   **B.      Alleged Failure to Provide Accurate Information**

7   Cisco asserts that, after Cisco discovered the defect in its set-top boxes and sought ST Micro's

8   assistance to address it, ST Micro knowingly or negligently provided Cisco with inaccurate

9   information regarding the Viper17LN chips and its remediation efforts.  *Id*. ¶¶ 47-144.  Cisco asserts

10  that "[t]he first step in ST Micro's disinformation to Cisco was an omission" (*id*. ¶ 48), which Cisco

11  bases on the allegation that, once Cisco informed ST Micro of the set-top box failures on June 10,

12  2013, "ST Micro did not provide useful information to Cisco for ten days" (*id*. ¶ 59).  Cisco asserts

13  that what it characterizes as "ST Micro's disinformation campaign" (*id*. ¶ 62) continued when ST

14  Micro provided an initial report of its failure analysis on June 21, 2013, which did not provide the

15  root cause of the failure, did not state that there was a design defect that impacted thousands of

16  previously shipped chips, and "indicated that [the] Viper chips had an acceptable failure rate."  *Id*.

17  ¶¶ 64, 69.  Cisco further asserts that, on June 28, 2013, ST Micro provided Cisco with a spreadsheet

18  that indicated that the chips with date codes 309 and above were not affected by the leakage issue and

19  communicated to Cisco that the chips with date codes 309 and above had gone through a baking

20  process that fixed the leakage problem.  *Id*. ¶¶ 77, 79.  Cisco alleges that in August 2013, however,

21  ST Micro acknowledged that chips date-coded 309 and above were also failing and that ST Micro

22  had not applied the baking process to all of those chips.  *See id.* ¶¶ 85, 89.  Cisco further alleges that

23  ST Micro did not provide Cisco with assurances and test results demonstrating that ST Micro's

24  newest manufacturing process would not have the same problems when Cisco demanded such

25  assurances and testing.  *Id*. ¶¶ 108-117.  Cisco alleges that ST Micro did not (or could not) provide

26  Cisco with a supply of chips to support its production and repair needs and so Cisco suspended its

27  manufacturing and repair operations.  *Id*. ¶ 117.

28

C.       **Alleged Conspiracy to Defraud Cisco**

The TAC contains a section entitled, "The Participating Officers Conspired to Defraud Cisco," which alleges that the Participating Officers "conspired to conceal the latent defects in the Viper chips from Cisco and provide Cisco inaccurate information regarding the latent defect in the Viper chips." *Id.* § IV (¶¶ 145-157 at ¶ 145).  Cisco acknowledges that its entire set of conspiracy allegations is based solely "on information and belief." *Id.* ¶ 145 ("The allegations below are based on information and belief.").  In support of its conspiracy theory, Cisco alleges that a group of Participating Officers, which expanded throughout the relevant time period, knew about the purported latent defect in the Viper17LN chip, the associated failure rate, the root cause of the failure, and the Viper17LN chip's role in causing set-top box failures but "agreed to conceal that information from Cisco and provide Cisco with inaccurate information regarding the defect." *Id.* ¶¶ 146-149.  Cisco also alleges that the Participating Officers conspired to conceal from Cisco the purported problem with the Viper17LN chip and what they knew about it, and conspired to delay providing Cisco with confirmatory information regarding the chip and to stall implementation of steps to correct the problem. *Id.* ¶¶ 150-152.  Cisco asserts that "STMicro-US is responsible for the actions and omissions of ST Micro-Italy and ST-Micro Italy [sic] is responsible for the actions and omissions of ST Micro-US." *Id.* ¶ 154.  Cisco further asserts that STMicro U.S. is estopped from denying responsibility for the actions and omissions of STMicro Italy and STMicro China officers.  *Id.* ¶ 155.

Based on the TAC's allegations, Cisco purports to assert causes of action against STMicro U.S. for (1) negligence, (2) negligent misrepresentation, (3) intentional misrepresentation, (4) negligent interference with prospective economic advantage, (5) intentional interference with prospective economic advantage, and (6) intentional interference with existing contractual relations. The TAC does not specify which causes of action are predicated on a theory of derivative liability.

## IV.    PROCEDURAL HISTORY

On July 24, 2014, STMicro U.S. moved to dismiss Cisco's original complaint and brought a special motion to strike Cisco's claims for negligent interference with prospective economic relations, negligent interference with contractual relations, defamation, and trade libel pursuant to California

1   Code of Civil Procedure Section 425.16.  ECF Nos. 11, 13.  Instead of defending against those

2   motions, Cisco chose to amend its complaint.

3        Cisco filed its Amended Complaint ("FAC") on August 29, 2014.  ECF No. 21.  In its FAC,

4   Cisco dropped its defamation and trade libel claims but re-asserted negligence, negligent

5   misrepresentation, and intentional misrepresentation claims.  *Id*.  Cisco also asserted claims for

6   "intentional interference with business relations" and "negligent interference with business relations."

7   *Id*.

8        On September 30, 2014, STMicro U.S. moved to dismiss the FAC and moved to strike certain

9   paragraphs therein.  ECF Nos. 37, 38.  On December 29, 2014, the Court granted, in part, the motion

10  to dismiss and denied the motion to strike.  ECF No. 48 ("Order").  The Court determined that Cisco

11  did not allege facts sufficient to support a conspiracy theory (or any other theory of derivative

12  liability) against STMicro U.S.  Order at 4-5.  It explained,

13           The FAC alleges that ST Micro US is secondarily liable for the actions
             of ST Micro generally through a civil conspiracy theory.  The court
14           finds that the FAC does not allege sufficient facts to support secondary
             liability of ST Micro US under a theory of civil conspiracy. . . .
15           [W]hen a plaintiff alleges that a defendant is liable for intentional
             misrepresentations under a civil conspiracy theory, Rule 9(b) requires
16           that the plaintiff allege with particularity facts that support the
             existence of a civil conspiracy.
17
18           . . . . Cisco's allegations that starting June 10, 2013, the employees of
             multiple ST Micro subsidiaries, including ST Micro US, conspired to
19           conceal information from Cisco regarding the Viper chip defects and
             conspired to provide Cisco inaccurate information regarding the Viper
20           chip defects are conclusory allegations insufficient to support a
             pleading of conspiracy.

21  *Id*. (citations omitted).  The Court did ***not*** grant Cisco leave to amend its conspiracy allegations.  *Id*.

22  The Court determined that Cisco's allegations of direct liability on the part of STMicro U.S. were

23  sufficiently pled with respect to its negligence, negligent misrepresentation, and intentional

24  misrepresentation claims, however, and thus denied STMicro U.S.'s motion to dismiss those claims.

25  *Id*. at 5-11.  In addition, the Court dismissed Cisco's claims for intentional and negligent interference

26  with business relations with leave to amend, concluding that they were not adequately pled and that

27  "it is unclear what claim plaintiff is trying to allege under the 'interference with business relations'

28  name."  *Id*. at 12.

Cisco filed a Second Amended Complaint ("SAC") on January 23, 2015.  ECF No. 50.  In that complaint, Cisco re-asserted causes of action for negligence, negligent misrepresentation, and intentional misrepresentation.  *Id.*  In addition, in place of its prior causes of action for negligent and intentional "interference with business relations," Cisco asserted causes of action for negligent interference with prospective economic advantage, intentional interference with prospective economic advantage, and intentional interference with existing contractual relations.  *Id.*  As in the FAC, Cisco asserted that STMicro U.S. had participated in a conspiracy with other ST Micro entities and so should be held liable for the actions of those other entities.  *Id.*  Cisco asserted that STMicro U.S. should be estopped from denying responsibility for the actions and omissions of those other ST Micro entities.  *Id.*

On the same day that it filed the SAC, Cisco moved for leave to file the TAC, which includes the same claims and allegations as the SAC but also names STMicro Italy as a defendant.  ECF No. 53.  STMicro U.S. opposed that motion on the basis of undue delay.  ECF No. 64.  The Court granted Cisco leave to file the TAC, although it noted that it "agree[d] with ST Micro US that Cisco could have, and should have, named ST Micro Italy in its original complaint."  ECF No. 69.  Cisco filed its TAC on April 1, 2015.  ECF No. 73.[3]

## V.   ARGUMENT

### A.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of claims upon which relief cannot be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  The facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

---

[3] STMicro Italy has not yet been served with the TAC.  This motion is brought only by STMicro U.S.

1        While a court must accept as true all material allegations in the complaint, as well as

2   reasonable inferences to be drawn from those allegations, "conclusory allegations of law and

3   unwarranted inferences are insufficient to defeat a motion to dismiss."  *Ove v. Gwinn*, 264 F.3d 817,

4   821 (9th Cir. 2001); *see also Iqbal*, 556 U.S. at 678 (providing that a pleading is insufficient if it

5   provides only "labels and conclusions," "a formulaic recitation of the elements of a cause of action,"

6   or "naked assertions devoid of further factual enhancement") (internal quotations and brackets

7   omitted); *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (holding that to survive review under

8   Rule 8(a), the "factual allegations that are taken as true must plausibly suggest an entitlement to

9   relief, such that it is not unfair to require the opposing party to be subjected to the expense of

10  discovery and continued litigation").

11       Where, as here, a plaintiff's allegations sound in fraud, they are also subject to the heightened

12  pleading standard of Federal Rule of Civil Procedure 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d

13  1120, 1125 (9th Cir. 2009).  This heightened pleading standard applies not only to claims of

14  intentional misrepresentation but also to allegations of fraudulent conduct in connection with other

15  claims, including Cisco's claims for intentional interference with existing contractual relations,

16  intentional interference with prospective economic advantage, and negligent misrepresentation.  *See,*

17  *e.g.*, *United States ex rel. HCI Sys. v. Agbayani Constr. Co.*, 2014 U.S. Dist. LEXIS 107791, at *9

18  (N.D. Cal. Aug. 5, 2014) ("While HCI does not bring a separate claim for fraud, its allegations of

19  fraudulent conduct in connection with its interference claim must still satisfy federal pleading

20  standards [under Rule 9(b)]."); *Charnay v. Cobert*, 145 Cal. App. 4th 170, 185 n.14 (2006) ("Fraud

21  and negligent misrepresentation must be pleaded with particularity and by facts that show how,

22  when, where, to whom, and by what means the representations were tendered.") (quotations

23  omitted); *Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1166 (N.D. Cal. 2011) (holding that

24  claims for negligent misrepresentation and intentional misrepresentation are fraud claims and are

25  subject to Rule 9(b)'s heightened pleading requirements).  The heightened pleading standard also

26  applies to Cisco's conspiracy allegations.  Order at 5; *Palomares v. Bear Stearns Residential Mortg.*

27  *Corp.*, 2008 U.S. Dist. LEXIS 19407, at *12 (S.D. Cal. Mar. 13, 2008).

28       A defendant may seek dismissal of a part of a cause of action based on the legal insufficiency

8

1  of the allegations under Rule 12(b)(6) where that part of the cause of action is separable from the rest

2  of the cause of action.  *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1082, 1104 (C.D. Cal. 2011)

3  (granting motion to dismiss plaintiff's state law claims to the extent they sought to recover benefits

4  owed under ERISA-covered deferred compensation plans); *see also Perez v. Banana Republic, LLC*,

5  2014 WL 2918421, at *2 (N.D. Cal. June 26, 2014) ("Under Rule 12(b)(6), a court may dismiss a

6  cla[i]m that is grouped together with other claims in a single cause of action, without dismissing the

7  entire cause of action.").  Thus, here, the Court can and should dismiss Cisco's claims to the extent

8  they are predicated on derivative liability, as such claims could have been separately asserted and are

9  separable from Cisco's claims to the extent they are predicated on direct liability.

10       **B.    Plaintiff Fails to Allege Facts Supporting Any Basis for Imposing Liability on
             STMicro U.S. for the Actions of Other ST Micro Subsidiaries.**

11

12       In granting in part STMicro U.S.'s motion to dismiss Cisco's FAC, this Court found that

13  Cisco had failed to properly allege civil conspiracy and, thus, rejected Cisco's assertion that STMicro

14  U.S. was secondarily liable for the actions of other ST Micro entities.  Order at 4-5.  As this Court

15  explained, to allege civil conspiracy, a plaintiff must plead the formation and operation of the

16  conspiracy, which requires the plaintiff to plead an agreement to commit the wrongful acts, and

17  damage resulting to the plaintiff from an act or acts done in furtherance of the common design.  *Id.*;

18  *see also Palomares*, 2008 U.S. Dist. LEXIS 19407, at *11 (quoting *Cellular Plus, Inc. v. Superior*

19  *Court*, 14 Cal. App. 4th 1224, 1236 (1993)).  This Court further explained that, when a plaintiff seeks

20  to impose liability for intentional misrepresentations under a civil conspiracy theory, Rule 9(b)

21  requires that the plaintiff allege with particularity the facts that support existence of a conspiracy.

22  Order at 5; *see also Palomares*, 2008 U.S. Dist. LEXIS 19407, at *12.  The Court found that Cisco's

23  FAC failed to allege sufficient facts showing an agreement between STMicro U.S. and the other ST

24  Micro entities and that Cisco's conclusory allegations of conspiracy were insufficient.  Order at 5.[4]

25  _____

26  [4] Although Cisco did not allege equitable estoppel in the FAC, it asserted that theory in its opposition
to STMicro U.S.'s motion to dismiss.  Plaintiff's Opp'n to STMicroelectronics, Inc.'s Mot. to

27  Dismiss (ECF No. 39) at 14-15.  STMicro U.S. explained in its reply in support of its motion to
dismiss why Cisco's equitable estoppel argument was patently incorrect on multiple grounds.  Def.'s

28  Reply Mem. in Support of Mot. to Dismiss Am. Complt. (ECF No. 42) at 3-4.  In ruling on STMicro
U.S.'s motion, the Court did not directly address equitable estoppel but implicitly rejected Cisco's use

Cisco's TAC again attempts to assert claims against STMicro U.S. based on the alleged actions of other ST Micro entities (TAC ¶¶ 145-157), despite the fact that the Court did *not* grant Cisco permission to replead these theories in its Order finding Cisco's prior secondary liability allegations insufficient (Order at 4-5).  Cisco once again asserts that STMicro U.S. conspired with other ST Micro entities to commit fraud, based *entirely* "on information and belief."  TAC ¶ 145 (stating in the introductory paragraph to the conspiracy section that "[t]he allegations below [*i.e.,* the allegations purporting to establish conspiracy] are based on information and belief").  Despite basing its entire conspiracy theory on allegations made "on information and belief," Cisco alleges no facts establishing *the basis* for that purported belief.  As explained below, such allegations "on information and belief" without an accompanying statement of the facts upon which the alleged belief is based do not satisfy Cisco's pleading burden.  Moreover, to the extent Cisco seeks to hold STMicro U.S. liable for the purported negligence of other ST Micro entities based on a conspiracy theory, that attempt necessarily fails, as Cisco makes no allegations that individuals at STMicro U.S. agreed with individuals at other ST Micro subsidiaries to commit negligence, nor could it do so as a matter of logic or law.  Finally, to the extent Cisco attempts to use the doctrine of equitable estoppel to impose substantive liability on STMicro U.S. (TAC ¶ 155), that reflects a fundamental misconception of the doctrine.  For these reasons, Cisco's attempts to plead derivative liability against STMicro U.S. fail.

### 1. Cisco's Allegations on "Information and Belief" Are Insufficient to Allege Conspiracy to Defraud.

As the Ninth Circuit has held, "allegations of fraud based on information and belief usually do not satisfy the particularity requirements under Rule 9(b)."  *Moore v. Kayport Package Express*, *Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).  Only if the facts at issue are exclusively within the defendant's knowledge *and* the plaintiff's allegations are accompanied by a statement of facts on which its belief is founded can allegations of fraud based on information and belief satisfy Rule 9(b).  *Id.*; *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("[A] plaintiff who makes allegations on information and belief must state the factual basis for the belief.");  *Kieran v. Samsung*

---

of that theory, as it found that Cisco's attempts to impose secondary liability on STMicro U.S. for the actions of others were unavailing.  *See* Order at 4-5.

*Semiconductor, Inc.*, 1993 U.S. Dist. LEXIS 21456, at *18 (N.D. Cal. July 6, 1993) (Under Rule 9(b),

a plaintiff "may not make his allegations on information and belief, except regarding those matter that

are uniquely within the opposing party's knowledge.  If he must plead on information and belief,

plaintiff must include a statement of the facts on which he bases his belief.") (citing *Moore*, 885 F.2d

at 540).

This requirement applies where, as here, a plaintiff attempts to impose secondary liability on a

defendant based on allegations made on "information and belief."  The court in *Impac Warehouse*

*Lending Group v. Credit Suisse First Boston Corp*., 2006 U.S. Dist. LEXIS 101145 (C.D. Cal. June

20, 2006), underscored this point in dismissing claims for aiding and abetting fraud in part based on

the plaintiff's failure to present the facts underlying its alleged "information and belief."  *Id*. at **22-

24.  The *Impac Warehouse* court made clear that the rule permitting pleading on information and

belief under certain circumstances "should not be mistaken for a license to base claims of fraud on

conclusory allegations and speculation" and that such pleading must be "accompanied by a statement

of the facts on which the belief is founded."  *Id*. at *19.  Allegations on information and belief that

lack a statement of the facts on which the belief is based and simply assert that such belief is based on

counsel's investigation "are not sufficient because they do not provide adequate detail either to

apprise the different defendants of the basis of their potential liability or to show that the complaint is

grounded in fact."  *Id*. at **19-20.

Moreover, as the court in *Delphix Corp. v. Actifio, Inc*., 2014 U.S. Dist. LEXIS 132310 (N.D.

Cal. Mar. 19, 2014), recently explained, allegations made on "information and belief" without the

inclusion of facts explaining the basis for that belief are particularly problematic where, as here, only

*certain* allegations in a complaint are so qualified.  *Id*. at *5.  The *Delphix* court explained that, where

the plaintiff selectively labels certain allegations as being made "on information and belief," "a

reasonable inference arises that [the phrase 'information and belief'] is intended as caveat, to provide

additional protection should plaintiff be unable to prove any of the factual allegations."  *Id*.  This type

of selective caveating "creates a further inference that plaintiff likely lacks knowledge of underlying

facts to support the assertion, and is instead engaging in speculation to an undue degree."  *Id*.

Accordingly, the *Delphix* court found that the plaintiff failed to satisfy its pleading burden and

1    granted the defendant's motion to dismiss.  *Id*. at *6.

2         Here, Cisco's conspiracy allegations are made entirely on information and belief, and Cisco

3    does not and cannot plead facts establishing the basis for its purported belief.  Ninth Circuit law

4    makes clear that such allegations do **not** satisfy the requirements of Rule 9(b).  Indeed, Cisco's

5    allegations here are particularly problematic because, like the plaintiff in *Delphix*, Cisco has

6    selectively qualified its allegations that STMicro U.S. conspired to defraud Cisco as based on

7    "information and belief," creating the inference that Plaintiff lacks knowledge of underlying facts to

8    support the assertion and is instead engaging in speculation.  Given this pleading failure, Cisco's

9    conspiracy-based claims for intentional misrepresentation, intentional interference with prospective

10   economic advantage, intentional interference with existing contractual relations, and negligent

11   misrepresentation (to the extent Cisco is alleging such claims)[5] must be dismissed.

12                **2.    To the Extent Cisco Seeks to Impose Conspiracy-Based Liability on**
                  **STMicro U.S. for Negligence, Negligent Misrepresentation, or Negligent**
13                **Interference, that Attempt Necessarily Fails.**

14        As noted above, it is not clear whether the TAC seeks to hold STMicro U.S. liable for

15   negligence, negligent misrepresentation, or negligent interference with prospective economic

16   relations on a conspiracy-based theory.  To the extent that it does, these claims must be dismissed, as

17   the TAC does **not** allege any agreement by STMicro U.S. to commit negligence, to make negligent

18   misrepresentations, or to negligently interfere with Cisco's prospective economic advantage.  *See*

19   TAC ¶¶ 145-157.  Nor could Cisco allege such an agreement to commit negligent—as opposed to

20   intentional—acts as a matter of logic or law, as a party can only conspire to commit an intentional

21   act.  As such, "an allegation of civil conspiracy appears inherently inconsistent with the allegation of

22   an underlying act of negligence."  *Koehler*, 606 F. Supp. at 173 n.10.  Accordingly, any attempt by

23   Cisco to impose conspiracy-based liability for negligence-based claims necessarily fails.  *Id*. ("This

24   court is unaware of California decisional law imposing liability for conspiring to commit

25   negligence.").

26

27

28   [5] As discussed above, all such claims are subject to Rule 9(b)'s particularity requirements.

**3.    Cisco's Estoppel Allegations Are Likewise Insufficient to Impose Derivative Liability on STMicro U.S.**

In the TAC, Cisco adds a paragraph asserting in a conclusory fashion on information and belief that "ST Micro-US is also estopped from denying responsibility for the actions and omissions of ST Micro-Italy and ST Micro-China officers." TAC ¶ 155. It is not clear whether Cisco intends to assert estoppel as an additional basis for derivative liability beyond conspiracy, but if it does, its attempt clearly fails. As STMicro U.S. explained in its prior motion to dismiss, equitable estoppel is not a basis for imposing substantive liability on a party for the actions of others. *Green v. Travelers Indem. Co.*, 185 Cal. App. 3d 544, 555 (1986). Rather, equitable estoppel "is invoked as a defensive matter to prevent the party estopped from alleging or relying upon some fact or theory that would otherwise permit him to recover something from the party asserting estoppel." *Id.* Here, as before, Cisco is attempting to hold STMicro U.S. responsible for the alleged acts of employees of separate legal entities; it is not attempting to prevent STMicro U.S. from relying on some previously contradicted fact to extract a benefit from Cisco. Equitable estoppel simply does not fit, and all of Cisco's claims should be dismissed insofar as they are premised on that theory.[6]

**C.    Cisco Fails to State a Claim for Intentional Interference with Existing Contractual Relations.**

Cisco attempts to re-plead its dismissed intentional interference claims by asserting a cause of action for intentional interference with existing contractual relations.[7] To state a claim for intentional interference with contractual relations, a plaintiff must allege "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the

---

[6] Cisco's estoppel allegations also fail for the additional reason that they are asserted entirely on information and belief, without the inclusion of any facts providing the basis for that purported belief. *See* TAC ¶¶ 145, 155; *supra* Section V.B.1. Moreover, they are purely conclusory and do not allege actual facts supporting the doctrine. *See* TAC ¶ 155; *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

[7] Cisco also asserts causes of action for intentional interference with prospective business relations and negligent interference with prospective business relations, but those causes of action are not the subject of this portion of the motion.

1   contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guar. Co.*, 19

2   Cal. 4th 26, 55 (1998).

3          Cisco's conclusory allegations do not establish the elements of this cause of action.  First,

4   Cisco merely alleges in a generalized manner that it "had contractual relationships with established

5   customers and partners" (TAC ¶ 193), without providing ***any*** detail about the terms of those

6   contracts.  Such allegations do not satisfy Cisco's burden to plead the existence of a specific, valid

7   contract.[8]  Where a plaintiff alleges that it "has contracts between it and its customers, while it need

8   not identify each and every contract, it at least must describe what those contracts involved."  *Int'l*

9   *Medcom, Inc. v. S. E. Int'l, Inc.*, 2014 U.S. Dist. LEXIS 8882, at *18 (N.D. Cal. Jan. 23, 2014).

10  Where, as here, "Plaintiff generally alleges that a contract existed but fails to identify any terms of the

11  contract," the claim should be dismissed.  *Nexsales Corp. v. Salebuild, Inc.*, 2012 WL 216260, at *4

12  (N.D. Cal. Jan. 24, 2012); *see also Yanik v. Countrywide Home Loans, Inc.*, 2010 WL 4256312, at *5

13  (C.D. Cal. Oct. 18, 2010) (dismissing intentional interference with contractual relations claim where

14  "plaintiff's complaint fails to identify facts establishing the contracts with which defendants allegedly

15  interfered"); *Hartford Life Ins. Co. v. Banks*, 2009 WL 863267, at *6 (S.D. Cal. Mar. 25, 2009)

16  (dismissing intentional interference with contractual relations cross-claim where plaintiff only made a

17  "conclusory allegation" of a "valid and existing agreement" and did "not allege facts to describe this

18  contractual relationship").

19         Cisco's failure to provide any information about the terms of its alleged contractual

20  relationships also prevents it from demonstrating that it suffered an "actual breach or disruption of the

21  contractual relationship."  *Quelimane Co.*, 19 Cal. 4th at 55.  Cisco asserts that its existing contractual

22  relations were disrupted because STMicro U.S.'s alleged misconduct caused its customers to

---

23  [8] The first element of the cause of action requires the plaintiff to plead more than just a contractual
24  relationship; it must plead that "it had a valid and existing contract."  *Sicor Ltd. v. Cetus Corp.*, 51
    F.3d 848, 860 (9th Cir. 1995).  "A 'valid' contract in this context is an enforceable contract, i.e., more
25  than a mere expectancy."  *Knott v. McDonald's Corp.*, 147 F.3d 1065, 1068 (9th Cir. 1998); *see also*
    *PMC, Inc. v. Saban Entm't Inc.*, 45 Cal. App. 4th 579, 601 (1996) (holding that "a cause of action for
26  intentional interference with contract requires an underlying *enforceable* contract") (emphasis in
    original), *overruled on other grounds by Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th
27  1134, 1159, n.11 (2003).  Cisco does not even assert the existence of a valid and enforceable contract,
    much less allege facts showing that it had such a contract.

28

"conclude that Cisco (a) could not supply functional set top boxes on a reasonable schedule, (b) could not repair failed set top boxes on a reasonable schedule, (c) had misrepresented the nature, scope, and extent of the set top failures, and (d) had misrepresented when the set top failures had been properly addressed."  TAC ¶ 197.  However, Cisco alleges no facts showing what effect, if any, those alleged conclusions had on its *contractual* obligations to its customers.[9]  To plead a claim for interference with contractual relations, it is not enough for Cisco to allege that its economic relationships with its customers were disrupted; it must allege facts showing that the actual *contractual* relationships were affected.  And, without providing any description of the terms of its contracts, Cisco does not and cannot do so.  *See Image Online Design, Inc., v. Internet Corp. for Assigned Names and Nos.*, 2013 WL 489899, at *9 (C.D. Cal. Feb. 7, 2013) (holding that plaintiff "must allege actual interference with actual contracts, such that the result is a specific breach, not merely general damage to the business. [Plaintiff] has pointed to no case law, nor has the court discovered any, that allows for such claims of generalized disruption of contracts"); *Wofford v. Apple Inc.*, 2011 WL 5445054, at **3-4 (S.D. Cal. Nov. 9, 2011) (dismissing intentional interference with contract claim where plaintiffs "do not identify the specific obligations that were breached, as required by *Twombly, Iqbal,* and Rule 9(b)" and have "failed to allege in what way their . . . contracts were breached").

Finally, Cisco fails to plead facts showing that STMicro U.S. committed "intentional acts designed to induce a breach or disruption of the contractual relationship" between Cisco and a third party.  *Quelimane Co.*, 19 Cal. 4th at 55.  The TAC asserts that STMicro U.S. "knew or should have known that Cisco had existing contractual relations with its customers and partners" based on its communications with Cisco and the customers as well as from publicly available information.  TAC ¶ 194.  However, the TAC does *not* allege that STMicro U.S. had anything more than a generalized knowledge of Cisco's relationships with these customers; it does not allege that STMicro U.S. had any knowledge of the substance or terms of the contracts that allegedly underlay these

---

[9] Cisco's allegations regarding the damages caused by STMicro U.S.'s actions—such as having to make concessions to its customers, being forced to replace set-top boxes with affected date codes, suffering order cancellations, and having customers refuse to clear customs on its shipments (*see* TAC ¶¶ 139, 141)—likewise do not include any contention that these damages resulted from, or were connected to, any *contractual* obligations it had with its customers.

1    relationships.  Without this knowledge of what Cisco's contracts involved, it is not possible for

2    STMicro U.S. to have formed the requisite intent to disrupt those contractual relationships.  *See*

3    *Trindade v. Reach Media Grp., LLC*, 2013 WL 3977034, at *16 (N.D. Cal. July 31, 2013) ("Because

4    [Plaintiff] fails to sufficiently allege that [Defendant] had anything more than generalized knowledge

5    of any contractual relationships, it likewise fails to allege that [Defendant] developed the requisite

6    intent to disrupt those relationships."); *Davis v. Nadrich*, 174 Cal. App. 4th 1, 10-11 (2009)

7    ("[Plaintiff] cannot prove the tort of interference with contract because he has not brought forth any

8    facts to show that [defendant] was sufficiently aware of the details of the . . . contract to form an

9    intent to harm it.").  As such, Cisco likewise fails to allege facts establishing this element of the

10   claim.

11           As a result of these deficiencies, Cisco fails to state a claim for intentional interference with

12   existing contractual relations.  These deficiencies are not new and have been previously highlighted

13   by STMicro U.S.  *See, e.g.*, Def.'s Mem. in Support of Mot. to Dismiss Am. Complt. (ECF No. 37) at

14   24 ("Cisco does not allege a valid and enforceable contract") and 25 ("Cisco does not even allege that

15   Defendant knew the terms of any contract between Cisco and a third party such that Defendant could

16   know that interference was certain or substantially certain to occur.").  Because Cisco has already had

17   a prior opportunity to amend this claim and is unable to fix its pleading deficiencies, the Court should

18   dismiss Cisco's claim for intentional interference with contractual relations with prejudice.  *See*

19   *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (affirming dismissal of

20   claims from second amended complaint with prejudice where plaintiff "did not cure the deficiencies"

21   identified in the first amended complaint).

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VI.   CONCLUSION**

For the foregoing reasons, STMicro U.S. respectfully requests that the Court dismiss with prejudice (1) all of Cisco's claims to the extent that they are predicated on derivative liability for the alleged actions of others; and (2) Cisco's claim for intentional interference with existing contractual relations in its entirety.

Dated:  April 20, 2015                                  SIDLEY AUSTIN LLP


                                                    By: */s/ Sara B. Brody*
                                                        Sara B. Brody
                                                        Attorneys for Defendant
                                                        STMICROELECTRONICS, INC.

17