UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CISCO SYSTEMS INC,<br><br>Plaintiff,<br><br>v.<br><br>STMICROELECTRONICS INC, et al.,<br><br>Defendants. | Case No.  5:14-cv-03236-RMW<br><br>**ORDER DENYING DEFENDANT STMICROELECTRONICS S.R.L'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Re: Dkt. No. 99 |

Plaintiff Cisco Systems Inc.'s ("Cisco") third amended complaint ("TAC") alleges claims of negligence, negligent and intentional misrepresentations, negligent and intentional interference with prospective economic advantage, and intentional interference with existing contractual relations against defendants STMicroelectronics, Inc. ("ST Micro-US") and STMicroelectronics, S.r.l. ("ST Micro-Italy"). Dkt. No. 73 (TAC). ST Micro-Italy filed a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Dkt. No. 99 (MTD). For the reasons stated below, the court DENIES ST Micro-Italy's motion to dismiss.

**I.    BACKGROUND**

This dispute centers on the unusually high failure rates of cable set-top boxes sold by Cisco to cable companies in India. Cisco is a California corporation with its principal place of business in San Jose, California. TAC ¶ 10. Cisco also has personnel in other U.S. states, as well as

1

countries outside the United States. MTD at 20. Cisco is a major supplier of set-top boxes in India. TAC ¶ 24. Cisco used the Viper17LN chip ("Viper chip") in the power supply units of its set-top boxes. TAC ¶ 2.

The Viper chip was manufactured in Europe and Asia by subsidiaries of STMicroelectronics, N.V. Defendant ST Micro-Italy is one subsidiary of ST Microelectronics, N.V. but is not the manufacturer of the Viper chip.[1] ST Micro-Italy is an Italian corporation with a principal place of business in Cantania, Italy. TAC ¶ 13. Cisco has not alleged that ST Micro-Italy has any business operations physically inside the United States.

The Viper chips experienced excessive leakage of current which in turn led to overheating of the chip and shut-down of the set-top box. TAC ¶ 30. In May 2013, one of Cisco's set-top box manufacturers observed failures with the Viper chip. TAC ¶ 34. Cisco reported the potential problem to ST Micro.

Through further communications involving employees of ST Micro, Cisco reported that Viper chips continued to fail. On June 10 and 12, 2013, Cisco communicated to ST Micro-US a preliminary analysis indicating that ST Micro's chip was defective and causing set-top failures, and sought ST Micro's assistance with addressing and remedying the set-top failures. TAC ¶¶ 51, 52. ST Micro promised to provide Cisco its full assistance, including complete and accurate information regarding the Viper chip and the measures ST Micro was taking to identify and solve the leakage issue. TAC ¶ 4. ST Micro-US provided Cisco with a list of employees from different ST Micro offices or subsidiaries, including ST Micro-Italy. TAC ¶ 42. ST Micro represented to Cisco that these employees were knowledgeable about the Viper chip defect and could help analyze the set-top box failures. TAC ¶¶ 42, 54. Cisco frequently communicated with this "core group" from ST Micro while ST Micro investigated the issue. TAC ¶ 54.

---

[1] The court refers to the parent together with its various subsidiaries collectively as "ST Micro," except as otherwise specified.

Throughout the period relevant to this complaint (from June 10, 2013 to approximately December 2013), Cisco also alleges that a group of employees from ST Micro subsidiaries (including ST Micro-Italy), collectively called "Participating Officers," acted in a civil conspiracy to deny, conceal information, and defraud Cisco regarding the nature, scope, and extent of the Viper chip issue. TAC ¶¶ 145-155.

Cisco alleges that ST Micro-Italy personnel knew and intended for their misconduct to cause economic harm to Cisco and knew and intended that the harm would adversely affect Cisco in California. TAC ¶ 20. Cisco further alleges that ST Micro-Italy personnel knew and intended to interfere with business relationships developed and maintained by personnel of Cisco in California. *Id.*[2]

## II.   ANALYSIS

### A.   Standard for Motion to Dismiss for Lack of Personal Jurisdiction

Where, as here, the motion to dismiss is based on written materials rather than an evidentiary hearing, plaintiff need only make a prima facie showing to demonstrate that the Northern District of California has personal jurisdiction over defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "[U]ncontroverted allegations in the complaint must be taken as true," and conflicts between facts contained within the declarations or affidavits submitted by the parties are resolved in the plaintiff's favor. *Id.*

"There are two forms that personal jurisdiction may take: general and specific." *Picot v. Weston*, 780 F.3d 1206, 1211 (2015). Plaintiff does not contend that ST Micro-Italy is subject to general jurisdiction in California, so this order considers only specific jurisdiction.

The Ninth Circuit has articulated the following three-prong test for analyzing a claim of specific jurisdiction:

(1)   The non-resident defendant must purposefully direct his

---

[2] Cisco's complaint contains additional allegations under the heading of "Venue and Jurisdiction," but Cisco declined to rely on those allegations in opposition to ST Micro-Italy's motion. Dkt. No. 106 at 10.

3

5:14-cv-03236-RMW
ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* The plaintiff must prove the first two prongs, at which point, "the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable.'" *Id.* at 1211-1212 (quotation omitted). The "purposeful availment" analysis is generally used for contract claims. *Id.* at 1212. For tort claims, the Ninth Circuit applies a "purposeful direction" test that examines "evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere."[3] *Id.*

### B.     Purposeful Direction

In analyzing purposeful direction, courts apply the Supreme Court's "effects" test from *Calder v. Jones*, 465 U.S. 783 (1983). Under *Calder*, the defendant must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state. *Picot*, 780 F.3d at 1213. ST Micro-Italy does not dispute that it engaged in some intentional acts, Dkt. No. 106 at 11, so the court turns to the remaining prongs of the *Calder* test.

Under the second prong of the effects test, "[t]he exact form of [a court's] analysis varies from case to case and 'depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue.'" *Picot*, 780 F.3d at 1214 (quoting *Schwarzenegger*, 374 F.3d at 807). "[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014). In cases

---

[3] ST Micro-Italy suggests that the purposeful availment test applies to negligence claims as well as contract claims, while the purposeful direction test applies to intentional torts. MTD at 2 n.1. Because Cisco relies only on purposeful direction in its opposition, Dkt. No. 106 at 25, this order does not address purposeful availment.

involving harmful communications, courts have held that "the 'express aiming' requirement of the effects test remains 'satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" *Leibman v. Prupes*, No. 2:14–cv–09003–CAS(VBKx), 2015 WL 898454, at *9 (C.D. Cal. Mar. 2, 2015) (finding personal jurisdiction based on emails sent to a California resident threatening blackmail) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)); *Rinky Dink Inc. v. Elec. Merch. Sys. Inc.*, C13-1347-JCC, No. 2014 WL 5880170, at *2-3 (W.D. Wash. Sept. 30, 2014) (finding jurisdiction over California company that placed pre-recorded phone calls to Washington businesses without consent).

ST Micro-Italy argues that the authority Cisco relies upon to support jurisdiction is inconsistent with the Supreme Court's 2014 *Walden* decision and the Ninth Circuit's decision earlier this year in *Picot*. Dkt. No. 114 at 8-11. Defendant argues that under these precedents, "it is not enough to commit an intentional act directed at a person known to have substantial connections to the forum" *Id.* at 9. In *Walden*, the Supreme Court found no personal jurisdiction when a Georgia DEA agent prepared a false affidavit to support a forfeiture action while aware of the plaintiffs' residency in Nevada and the likely impact of his fraud on the plaintiffs. 134 S. Ct. 1115 (2014). The plaintiff did not allege that Walden had contacted anyone in the forum state, let alone that such contact harmed the plaintiff. *Id.* at 1124 (noting that Walden "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada.").

The *Picot* court applied *Walden* to the case of a Michigan technology developer, Weston, who was sued in California where Picot resided for breach of contract and intentional interference with a sales agreement. 780 F.3d at 1209. Weston's "allegedly tortious conduct" consisted of making statements to an Ohio resident, which caused a Delaware corporation "to cease making payments into two trusts (in Wyoming and Australia)." *Id.* at 1215. Outside of his work with Picot, Weston had never conducted business in California. *Id.* at 1209. Because he performed the

5
5:14-cv-03236-RMW
ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

majority of his work in Michigan[4], the court found no personal jurisdiction. *Id.* at 1212-13.

The court notes that even after *Picot*, at least one district court in the Ninth Circuit has found that communications with a plaintiff may provide a basis for personal jurisdiction. *See Microsoft Corp. v. Mountain West Computers, Inc.*, No. C14–1772RSM, 2015 WL 4479490 (W.D. Wash. July 22, 2015) (distinguishing *Picot* and finding personal jurisdiction in part because Utah-based defendant "affirmatively contacted Microsoft" in Washington "through internet contact with its servers and by telephone").

The present case is also distinguishable from *Walden* and *Picot* because in neither of those cases did communications with someone in the forum state form the basis of the plaintiff's allegations.[5] Here, Cisco alleges that ST Micro-Italy's oral and written communications with Cisco's California personnel contained false and misleading statements regarding defects in the Viper chips. Cisco alleges that ST Micro-Italy personnel sent numerous emails and reports to California-based Cisco employees regarding the Viper chips. *See, e.g.*, TAC ¶¶ 20, 63, 67, 76-77; Dkt. No. 106 at 7-8. Moreover, Cisco alleges that ST Micro-Italy personnel had regular telephone calls with Cisco's California employees regarding the chips. *See, e.g.,* TAC ¶¶ 20, 65, 71, 78; Dkt. No. 106 at 6-7. Cisco further alleges that ST Micro-Italy personnel were aware at the time that at least some of the Cisco employees with whom they were communicating were based in California. Dkt. No. 106 at 15. ST Micro-Italy's briefs do not dispute this knowledge. Accordingly, ST Micro-Italy's communications with Cisco's California personnel are sufficient to satisfy the "express aiming" prong of the effects test.

The third prong of the effects test requires the plaintiff to show that harm is suffered in the forum state. "[A] corporation incurs economic loss, for jurisdictional purposes, in the forum of its

---

[4] While Weston had traveled to California in the past, *id.* at 1210, that travel was not part of *Picot*'s claim.
[5] The Supreme Court explicitly noted that electronic contacts with the forum were not at issue in *Walden*: "[T]his case does not present the very different questions whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State." 134 S. Ct. at 1125 n.9.

6
5:14-cv-03236-RMW
ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

principal place of business." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011). Cisco alleges that the aftermath of ST Micro-Italy's misleading communications injured Cisco in California—despite the fact that Cisco's set-top boxes at issues were only sold in India—because Cisco's principal place of business is in California. Dkt. No. 106 at 16; *see also* TAC ¶ 84. Such a loss is sufficient to satisfy the third prong of the effects test. *See United Tactical Systems LLC v. Real Action Paintball, Inc.*, Nos. 14–cv–04050–MEJ, 14–cv–02435–MEJ, 2015 WL 2228166, at *10 (N.D. Cal. May 11, 2015) (finding loss of profits for California corporation sufficient to satisfy effects test).

### C. Arising Out Of

The test for specific jurisdiction requires that the claim against the defendant be one that arises out of or relates to the defendant's forum-related activities. The court "must determine if the plaintiff . . . would not have been injured 'but for' the defendant's . . . conduct directed toward [plaintiff] in [the forum]." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). Here, but for ST Micro-Italy's alleged misleading communications with Cisco's California[6] employees, plaintiff's claim would not have arisen. Among other examples, Cisco described how it was unable to inform its customers of a potential systemic problem with the Viper chip because Cisco relied on a report approved by ST Micro-Italy employees. *See* TAC ¶¶ 67, 71, 74. ST Micro-Italy's alleged conduct satisfies the second prong.

### D. Fair Play and Substantial Justice

Finally, the third prong of the test for specific jurisdiction provides that the exercise of personal jurisdiction must comport with fair play and substantial justice. The court considers the following seven factors:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in

---

[6] The fact that ST Micro-Italy interacted with Cisco employees outside California as well does not change this conclusion. "If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006).

7
5:14-cv-03236-RMW
ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

> the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. None of the factors is dispositive in itself; instead, [the court] must balance all seven.

*Core–Vent Corp. v. Nobel Industries*, 11 F.3d 1482, 1487–88 (9th Cir. 1993). Jurisdiction is presumed to be reasonable once the first two prongs of the specific jurisdiction test have been met. *See Schwarzenegger*, 374 F.3d at 802. ST Micro-Italy argues that exercise of personal jurisdiction by this court would be unreasonable. The court disagrees.

The degree of interjection is extensive here. ST Micro-Italy personnel engaged in dozens of oral and written exchanges with Cisco's California employees over a period of time. ST Micro-Italy has not offered any specific evidence that defending a suit in California would impose a significant burden. Courts routinely reject claims by foreign defendants that it would be too burdensome for them to defend themselves outside their home country, particularly when those companies "use technology and transportation to carry on the business relationship at issue." *Pandigital, Inc. v. DistriPartners B.V.*, No. C 12-01588-CW, 2012 WL 6553998, at *4 (N.D. Cal. Dec. 14, 2012). ST Micro-Italy has not argued that jurisdiction in California would conflict with any Italian law and thus interfere Italian sovereignty. Moreover, California has a strong interest in providing its residents a convenient forum for redressing injuries caused by out-of-state defendants. *See, e.g., Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (recognizing that States have a "manifest interest" in providing a convenient forum for residents). ST Micro-Italy has not shown that another jurisdiction would be more efficient for resolving this dispute. While it appears true that some potential witnesses are located outside California, the fact that litigation against ST Micro-US is proceeding in California would make litigation in another forum duplicative. Because Cisco's allegations against ST Micro-US and ST Micro-Italy are intertwined, it would be unreasonable to expect Cisco to file separate lawsuits to give each defendant the privilege of defending this litigation in its own forum. *See Tamburo v. Dworkin*, 601 F.3d 693, 709 (7th Cir. 2010). ST Micro-Italy's counsel noted at oral argument that Italy might be an

alternative forum for this dispute, but the defendant has not explained why the option of litigating in Italy renders this Court's exercise of personal jurisdiction unreasonable in light of all of the other factors.

### III. ORDER

For the reasons explained above, the court DENIES defendant's motion to dismiss for lack of personal jurisdiction.

**IT IS SO ORDERED.**

Dated: September 1, 2015

Ronald M. Whyte
United States District Judge